UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MARION MICHAEL BEALL,

Plaintiff,

v. Case No. 26-cv-1134-bhl

REUEL MUIRIRI,
JAMES MOORE,
TYLA HOLLY,
SARAH SODERBERG, and
ASPIRUS DIVINE SAVIOR HOSPITAL,

Defendants.

---

**SCREENING ORDER**

---

Plaintiff Marion Michael Beall, who is currently serving a state prison sentence at the Wisconsin Resource Center and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Beall's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

**MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE**

Beall has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Beall filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and was assessed an initial partial filing fee of $6.64. On July 23, 2026, Beall paid the full $350 statutory filing fee. Beall's motion for leave to proceed without prepaying the filing fee will be granted.

**SCREENING OF THE COMPLAINT**

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or

malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Beall, on September 8, 2025, during a consultation with Dr. Reuel Muiriri, he requested that his prescription for the anti-depressant Lexapro be restarted. Beall also requested that the dosage of his sleep aid be increased. Beall asserts that Dr. Muiriri informed him that the only change to his medications that day would be to restart Lexapro. A few days later, on September 11, 2025, Beall discovered that in addition to a new prescription for Lexapro starting, his prescription for the anti-psychotic medication Geodon was cancelled. Beall explains that Geodon had provided him with extended periods of stability, and he considered it to be the most important medication in his regime. Beall asserts that the medication was cancelled without notice or explanation.

Beall states that he began to experience withdrawal symptoms by the afternoon and that his mental health deteriorated rapidly. According to Beall, he immediately began to write to the health services unit and the psychological services unit, demanding an explanation and "begging" for the Geodon prescription to be reinstated. A few days later, on September 15, 2025, Beall met with a psychological services unit worker who informed Beall that she would refer him for a priority appointment with Dr. Muiriri, but "she couldn't make any promises." Beall does not state whether the appointment with Dr. Muiriri happened or, if it did, what the outcome of that appointment was.

Beall asserts that, a month later, on October 14, 2025, he requested to be placed in observation status because he was not feeling safe. Beall states that he returned to general population on October 21, 2025. Beall asserts that, after not sleeping for 72 hours and becoming "extremely psychotic," he swan dived off his top bunk in an attempt to commit suicide. Beall asserts that he reconsidered his decision to commit suicide and asked to be placed in observation. He asserts that Tyla Holly placed him in a cell in the restrictive housing unit. According to Beall, he refused medical care, and about an hour later, Holly updated Beall's status to observation status. Beall asserts that no precautions were taken to keep him safe. He states that he should have been placed in bed restraints. Early in the morning hours of October 24, 2025, at about 3:30 a.m., Beall "tried again" by jumping off his sink. He states that he landed chin-first and lost consciousness. When he awoke, he realized he had blood coming out of his ear. Beall notified an officer doing his rounds, and Beall was transported to Aspirus Divine Savior Hospital by Sergeant James Moore.

Beall asserts that he was examined by Dr. Sarah Soderberg, who ordered a CT scan. His chin and ear were cleaned, and Dr. Soderberg stitched up Beall's chin. She then ordered that Beall could be discharged. Beall demanded to see the CT scan results, but Moore refused to let Beall see them. Beall asserts that he was returned to his cell "with no precautions taken to ensure his safety." He again asserts that he should have been placed in bed restraints. Beall asserts that he tried to eat breakfast, but he could not chew. He then "decided to try yet again." Beall asserts that he landed on the right side of his forehead. He states that he woke up in a pool of blood and was temporarily paralyzed.

After calling for help, Beall was again taken to the hospital, where another CT scan was performed. The second CT scan showed that Beall's jaw was broken, his right ear drum was perforated and collapsed, he had a blood clot in his brain, and his skull was fractured in multiple

places. Beall was then transferred to UW Madison for a craniotomy and to have bars placed in his mouth. He states that his jaw was wired shut and other surgeries were required.

## THE COURT'S ANALYSIS

Beall asserts that he is entitled to "financial compensation in the amount of $3,000,000.00" and an apology from Defendants for his self-inflicted injuries. Beall's complaint is deficient for multiple reasons. First, while multiple claims against a single party are fine, a plaintiff cannot bring unrelated claims against different defendants in the same case. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). A plaintiff may join multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. Fed. R. Civ. P. 20(a)(2); *George*, 507 F.3d at 607; *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (joinder of multiple defendants in one case "is limited to claims arising from the same transaction or series of related transactions"). Beall's claim against Dr. Muiriri based on allegations that he abruptly cancelled Beall's anti-psychotic medication is not properly joined with his claims against the remaining Defendants based on allegations that they were deliberately indifferent to the risk of harm that he posed to himself and to his self-inflicted injuries. Beall's medication was cancelled in early September 2025, nearly six weeks before he self-harmed in late October 2025. Nothing in the complaint suggests that Dr. Muiriri was involved in Beall's self-harming incident. Accordingly, the claims against Dr. Muiriri and the other Defendants must be brought in separate cases because they arise out of different events and will not involve common questions of law and fact. The Court will therefore "drop" Dr. Muiriri from this case. *See* Fed. R. Civ. P. 21.

Moreover, based on the documents Beall attached to and relied on in his complaint, it appears that Beall did not exhaust the available administrative remedies on his claim against Dr. Muiriri before he brought this lawsuit. *See* Dkt. No. 1-1; Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). As noted, Dr. Muiriri allegedly cancelled the prescription on September 8, and Beall learned about the cancellation on September 11. Under Wis. Stat. § DOC 310.07(2), Beall was required to submit an inmate complaint within fourteen days of the occurrence giving rise to the complaint,

or, here, by September 22, 2025. Beall did not submit his inmate complaint until January 26, 2026. In his inmate complaint, Beall explained that he had suffered a traumatic brain injury and only recently remembered all the relevant events, but Beall's injury occurred in late October, about a month *after* the fourteen-day window. Accordingly, Beall did not provide good cause for his failure to timely submit his inmate complaint, and the inmate complaint was properly rejected. *See Schillinger v. Kiley*, No. 21-2535, 2022 WL 4075590, at *1 (7th Cir. Sept. 6, 2022) ("Although failure to exhaust is an affirmative defense, a district court may dismiss a complaint at screening if the complaint, and any documents subject to judicial notice, establish the defense so plainly as to make the suit frivolous.").

Next, Beall also fails to state a claim against the remaining Defendants based on their alleged deliberate indifference to the risk he posed to himself and/or to his self-inflicted injuries. Prison officials violate the Eighth Amendment if they are aware of an objectively serious risk of harm to an inmate and knowingly or recklessly disregard it. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994). Notwithstanding the fact that deliberately causing harm to oneself would normally constitute a superseding or intervening cause of injury, *see Taylor v. Wausau Underwriters Ins. Co*., 423 F. Supp. 2d 882, 888–89, 900 (E.D. Wis. 2006), the duty imposed on prison officials extends to protecting inmates from imminent threats of serious self-harm, and the "obligation to intervene covers self-destructive behaviors up to and including suicide." *Miranda v. Cnty. of Lake*, 900 F.3d 335, 349 (7th Cir. 2018). Even so, Beall's allegations are insufficient to state a claim against any of these Defendants.

With respect to Holly, Beall alleges that, on October 23, 2025, he asked her to place him in observation status. According to Beall, she responded by first moving him to the restricted housing unit, and then about an hour later, placing him on observation status. Beall asserts that she took no precautions to keep him safe, but this conclusion is contradicted by his allegations that Holly moved him to a different cell, offered him medical care (which he refused), and then upgraded him to observation status where he would be observed by officers at regular intervals. Nothing in the complaint suggests that Holly was aware that additional precautions were needed to keep Beall safe from himself. She had, after all, given him exactly what he requested—an observation status placement. With the benefit of hindsight, one could infer that imposing the significantly more harsh restriction of bed restraints may have benefited Beall, but Holly's failure to anticipate Beall's self-destructive behavior is at most negligence, which is insufficient to support

an Eighth Amendment claim. *See Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016) ("[W]ithout more, a mistake in professional judgment cannot be deliberate indifference.")

Beall also fails to state a claim against Moore, who allegedly transported him to the hospital and then refused to let Beall see the results from his first CT scan. Moore is an officer who was tasked with transporting Beall to and from the hospital. He is not a medical professional and was not required to engage with Beall about his medical condition. Beall had the opportunity to discuss the results with the emergency room doctor and could have requested additional consultation from his provider at the prison. Moore's refusal to accede to Beall's demands regarding his medical records did not violate the Constitution. *See Burks v. Raemisch*, 555 F.3d 592, 595 (Feb. 10, 2009) ("Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen."). To the extent Moore was responsible for placing Beall back into observation instead of in bed restraints (it is not clear who was responsible for this decision), nothing in the complaints suggests that Moore knew Beall continued to pose an imminent risk of serious harm to himself. Beall includes no information about his interactions with Moore regarding his placement, and the Court will not speculate on that point.

Finally, Beall does not state a claim against Dr. Soderberg or her employer based on speculation that she misread the first CT scan, which Beall insists revealed that his ear and jaw were injured. First, it is doubtful that Dr. Soderberg, an emergency room doctor, is a state actor. *See Thomas v. Mohiuddin*, No. 25-2352, 2026 WL 1859320, at *3 (7th Cir. June 29, 2026) (citing *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 823 (7th Cir. 2009)). But, that issue aside, the Court cannot reasonably infer based only on Beall's suspicions that she intentionally misread the CT scan results, especially because Beall acknowledges that after the first CT scan he *again* attempted to seriously injure himself by jumping face-first off of something and landing on the side of his forehead. He states that he woke up in a pool of blood and temporarily could not move. It is not clear why Beall speculates that he was injured during his second self-harm attempt rather than his third, after which a second CT scan confirmed he had succeeded in accomplishing his goal of severely injuring himself. In any event, even assuming Dr. Soderberg misread the first CT scan,

"failing to correctly diagnose a condition is evidence of negligence, not deliberate indifference." *Grant v. Heidorn*, 802 F. App'x 200, 205 (7th Cir. 2020) (citing *Cesal v. Moats*, 851 F.3d 714, 724 (7th Cir. 2017)).

Plainly put, Beall provides no arguable basis for relief, having failed to make any rational argument in law or fact to support his claims. *See House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992) (quoting *Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988), *aff'd sub nom. Neitzke v. Williams*, 490 U.S. 319 (1989)). The Seventh Circuit has explained that the norm is to afford a plaintiff at least one opportunity to amend his complaint. *See Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). Accordingly, if Beall believes he can cure the deficiencies identified in this decision, he may file an amended complaint by **September 7, 2026**. He is advised that an amended complaint will replace the original complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). If an amended complaint is received by the deadline, the Court will screen it as required by 28 U.S.C. §1915A. If an amended complaint is not received, the Court will dismiss this action based on Beall's failure to state a claim in his original complaint. If Beall does not believe he can cure the deficiencies identified in this decision, he does not have to do anything further. The Court will enclose an amended complaint form along with this decision.

**IT IS THEREFORE ORDERED** that Beall's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that on or before **September 7, 2026**, Beall may file an amended complaint if he believes can cure the defects in the original complaint as described in this decision.

**IT IS FURTHER ORDERED** that the Clerk's Office mail Beall a blank prisoner amended complaint form and a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions," along with this order.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution,

and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Beall is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 7th day of August, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge